# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

___

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                             Case No. 2:19-cr-20046-MSN

JAMAL TAYLOR,

    Defendant.

___

## ORDER ACCEPTING AND ADOPTING REPORT AND RECOMMENDATION AND DENYING MOTION TO SUPPRESS STATEMENT
___

Before the Court is Defendant's Motion to Suppress Statement ("Motion") filed December 4, 2019. (ECF No. 48.) The Motion was referred to the United States Magistrate Judge for a report and recommendation. (ECF No. 50.) The Magistrate Judge held a hearing on February 10, 2020. (ECF No. 60.) At the conclusion of the hearing, the Magistrate Judge orally announced her proposed findings of fact and recommended conclusions of law, which were incorporated by reference into her Report and Recommendation issued February 18, 2020 ("Report"). (ECF No. 63.) This Court extended the deadline for objections to the Report due to delays in Defendant obtaining a transcript of the hearing. (ECF No. 67.) Defendant filed his objections to the Report on March 18, 2020. (ECF No. 70.) Plaintiff responded to Defendant's objections on March 31, 2020. (ECF No. 71.) For the reasons set forth below, Defendant's objections are **OVERRULED**, and Defendant's Motion to Suppress Statement is **DENIED**.

## BACKGROUND

Defendant's Motion centers on a statement he made while being transported to the federal building in Memphis, Tennessee. On April 4, 2019, Special Agents Kevin Lufbery and Ryan Todd with the Bureau of Alcohol, Tobacco, Firearms and Explosives picked Defendant up from the Tipton County Corrections Center where he was being held and transported him to the federal building in Memphis, Tennessee. (*Id.* at PageID 140–41, 149.) During the roughly one-hour long drive, Agent Lufbery and Defendant discussed various things including football and music. (ECF No. 68 at PageID 150–51.) Agent Lufbery testified that his general procedure towards the end of a transport is to make the defendant aware of what is going on. (*Id.* at PageID 141–42.) In this case, Agent Lufbery told Defendant he was being transported into federal custody and that he would be appearing before a magistrate judge. (*Id.*) Agent Lufbery told Defendant that the magistrate judge would explain the charges being brought against him and could answer any questions Defendant might have. (*Id.*) Agent Lufbery also told Defendant that if he had any desire to work with the Government and potentially provide information, that he should have his attorney, once one was appointed, contact the Government so that his attorney and the Government could potentially work out a deal for Defendant to provide information. (*Id.* at PageID 142.) At that point, Defendant allegedly said, "I made a mistake being around that gun. I'm just going to do my time." (*Id.* at PageID 142.)

Agent Lufbery testified that he has previously told other defendants the same thing about potentially cooperating and none of those individuals responded by making an incriminating statement. (*Id.* at PageID 158–59.) Agent Lufbery also testified that he specifically told Defendant that he did not need to answer, but that he should talk with his attorney and have the attorney reach out to the Government's attorney. (*Id.* at PageID 159.)

During cross-examination of Agent Lufbery, there was a back and forth exchange regarding whether Agent Lufbery knew Defendant had an attorney for his state case for charges involving the same facts underlying the federal charge in this matter. (*Id.* at PageID 145–46.) Defense counsel then inquired whether Agent Lufbery would have talked to the Defendant had Agent Lufbery known Defendant had a lawyer in the state court matter:

> Q.· And if you had known at that time that he had an attorney on that case for almost two years, would you have talked to him while he was in the vehicle?
>
> A.· No, not about the case.
>
> Q.· Why not?
>
> A. I have no reason to. I'm there to transport him.

(*Id.* at PageID 146–47.)

During re-cross examination, Defense counsel inquired about Agent Lufbery's earlier response:

> Q. I had asked you a question earlier on direct – on cross-examination. You said if you had known he had an attorney, you wouldn't have inquired about this.
>
> A. I did not say that.
>
> Q. Well, I may have been mistaken then. I asked if you knew he had an attorney, would you have spoken to him while he was in the car. I believe you said no?
>
> A. I don't believe I said that. I believe what I said –
>
> . . . .
>
> A. Okay. I believe what I said was I didn't know if he had an attorney on any state charges, but that the – there was no questioning on his particular case. It was conversation and there was no – there would be no need to consult with an attorney as we were just conversing on –
>
> Q. If you had known he had an attorney prior to getting in the vehicle, would you have spoken to him in the vehicle?

3

> A. Spoken to him? Yes.
>
> Q. Would you have asked him about cooperating in the vehicle?
>
> A. Yeah.
>
> Q. If you had known he had an attorney?
>
> A. Yes.

(*Id.* at PageID 160.)

Defendant also testified at the hearing. Defendant testified that he had been represented by attorney Tracy Walker in his state court matter since 2017. (*Id.* at PageID 164.)

## **STANDARD OF REVIEW**

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Criminal Procedure 59, a district court may refer a motion to suppress to a magistrate judge for the preparation of a report and recommendation. "The magistrate judge must promptly conduct the required proceedings and enter on the record a recommendation for disposing of the matter, including any proposed findings of fact." Fed. R. Crim. P. 59(b)(1). If a party files timely objections to the recommendation, the district court must consider those objections *de novo* and "accept, reject, or modify the recommendation." Fed. R. Crim. P. 59(b)(3). Failure to object to a magistrate judge's findings or conclusions results in waiver of those objections. Fed. R. Crim. P. 59(b)(2).

"The filing of objections to a magistrate's report enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Thomas v. Arn*, 474 U.S. 140, 147 (1985). Therefore, objections to a magistrate judge's report must be "specific." Fed. R. Crim. P. 59(b)(2). Vague, general, or conclusory objections are improper, will not be considered by the reviewing court, and are "tantamount to a complete failure to object." *Cole v. Yukins*, 7 F. App'x 354, 356 (6th Cir. 2001); *see also Miller v. Currie*, 50 F.3d 373, 380 (6th Cir.

1995) ("[A] general objection to a magistrate's report, which fails to specify the issues of contention, does not satisfy the requirement that an objection be filed. The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious."); *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004) ("An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context.") The Court need not review—under a *de novo* or any other standard—those aspects of a report and recommendation to which no objection is made. *Thomas v. Arn*, 474 U.S. 140, 150–52 (1985).

## **DISCUSSION**

Defendant makes two objections to the Report. The first objection is to the Magistrate Judge's finding of fact that Agent Lufbery initially responded "no" when asked whether he would have spoken to Defendant during the transport had he known Defendant was represented by counsel, but that Agent Lufbery later explained that yes, he would have still spoken to Defendant because he was not talking to Defendant about his case. (ECF No. 70 at PageID 192.)

This Court has reviewed the transcript, and the Magistrate Judge's finding is consistent with Agent Lufbery's testimony. As the Magistrate Judge recalled, when initially asked whether he would have talked to Defendant had he known Defendant was represented by an attorney, Agent Lufbery responded, "No, not about the case." (ECF No. 68 at PageID 147.) However, when asked about the matter again on re-cross examination, Agent Lufbery testified that his earlier answer was that he did not know if Defendant had an attorney for his state matter, but that he had not questioned Defendant about his case. Upon further questioning, Agent Lufbery testified that he would have spoken to Defendant during the transport, including telling him the information about cooperating, even if he had known he had an attorney. (*Id.* at PageID 159–60.) In announcing her findings of

5

fact, the Magistrate Judge noted the perceived inconsistency in Agency Lufbery's testimony, and candidly stated this his initial response caught her attention. (*Id.* at PageID 171.) However, as the Magistrate Judge noted, Agent Lufbery later explained that he would have talked to Defendant even if he had known Defendant was represented by counsel because he was not talking to Defendant about Defendant's case. (*Id.* at PageID 172.) Defendant's objection is **OVERRULED**.

Defendant's second objection is to the Magistrate Judge's conclusion that the exchange between Agent Lufbery and Defendant was not an interrogation. (ECF No. 70 at PageID 192.) The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. To protect this privilege, law-enforcement officers are required to inform a person of his right to remain silent before subjecting him to a custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 467–68 (1966). "In practice, this places a burden upon state and federal officers to ensure that a suspect in custody is 'adequately and effectively apprised of his rights' and to honor those rights when exercised unless they have been waived." *United States v. Saylor*, 705 F. App'x 369, 372 (6th Cir. 2017) (quoting *Miranda*, 384 U.S. at 467). Specifically, *Miranda* mandates the following procedural safeguards: "prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Miranda*, 384 U.S. at 444. The defendant, however, "may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently." *Id.* Because the "warning of rights and their subsequent waiver are both 'prerequisites to the admissibility of any statement made by a defendant,' the failure of law-enforcement officers to adequately warn a suspect in custody of his constitutional rights is fatal to the admission of any testimony induced by subsequent police interrogation." *Saylor*, 705 F. App'x

at 372 (quoting *Miranda*, 384 U.S. at 476). In other words, statements made in violation of Miranda must be suppressed. *Id.*

*Miranda* protections attach only when a defendant is subject to custodial interrogation. In *Rhode Island v. Innis*, the Supreme Court defined "interrogation" for purposes of *Miranda* as not only "express questioning, but also . . . any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response." *Innis*, 446 U.S. 291, 301 (1980). An incriminating response includes "any response—whether inculpatory or exculpatory—that the prosecution may seek to introduce at trial." *Id.* at 301 n.5. Whether an interrogation has occurred is a fact-specific inquiry. *United States v. Thomas*, 381 F. App'x 495, 501–02 (6th Cir. 2010). "Even a relatively innocuous series of questions may, in light of the factual circumstances and the susceptibility of a particular suspect, be reasonably likely to elicit an incriminating response." *Id.* "If a reasonable person, using all of the facts and circumstances available, would view the police as attempting to obtain a response to use at trial, it is an 'interrogation.'" *Bachynski v. Stewart*, 813 F.3d 241, 246 (6th Cir. 2015).

On the other hand, the Fifth Amendment does not prohibit all incriminating admissions; "[absent] some officially coerced self-accusation, the Fifth Amendment privilege is not violated by even the most damning admissions." *New York v. Quarles*, 467 U.S. 649, 654 (1984) (quoting *United States v. Washington*, 431 U.S. 181, 187 (1977)). Statements made freely and voluntary, without compulsion, are not barred by the Fifth Amendment and are admissible in evidence. *Miranda*, 384 U.S. at 478.

There is no disagreement as to whether Defendant was in custody at the time he made the statement to Agent Lufbery; clearly, he was. Whether interrogation occurred is the primary issue.

7

Upon a *de novo* review, this Court concludes that Defendant did not make his statement in response to interrogation by Agent Lufbery. There was no express questioning of Defendant, and Agent Lufbery's statements to Defendant were not its functional equivalent. Agent Lufbery's statements, objectively viewed, were not reasonably likely to elicit a response from Defendant. Indeed, Agent Lufbery testified that he told Defendant he did not need to provide any information at that time, and he directed Defendant to speak with his attorney, once one was appointed for him, if he did want to provide information. Finally, there is no evidence that Defendant was particularly susceptible to statements about potentially cooperating with the Government or providing information. Accordingly, Defendant's objection is **OVERRULED**.

## **CONCLUSION**

For the reasons set forth above, Defendant's objections are **OVERRULED.** The Magistrate Judge's Report is **ACCEPTED** and **ADOPTED**. Defendant's Motion to Suppress Statement is **DENIED**.

**IT IS SO ORDERED**, this 6th day of April 2020.

*s/ Mark S. Norris*
MARK S. NORRIS
UNITED STATES DISTRICT JUDGE